Buckwalter v. Henrion.

---

No. 25,310.

LAURA BUCKWALTER, *Appellee,* v. W. S. HENRION et al., *Appellants.*

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Street Improvement—Special Assessment—Interest.* In view of the context and the evident general purpose of the statute providing that a special assessment for a street improvement shall include interest up to the maturity of the corresponding bonds the phrase used therein describing the time from which such interest is to run as "the date of the issuance of said bonds" is interpreted as the equivalent of "the date of said bonds."

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed March 7, 1925. Reversed.

*Robert C. Foulston, George Siefkin,* and *I. N. Williams,* all of Wichita, for the appellants.

*Laura Buckwalter,* of Wichita, *pro se.*

The opinion of the court was delivered by

MASON, J.: Laura Buckwalter brought this action seeking an injunction against public officers restraining the assessment and collection of a special street improvement tax upon city lots owned by her. The injunction was granted and the defendants appeal.

The plaintiff contended that the entire proposed tax was illegal upon various grounds, but her position was sustained by the trial court upon but one proposition—that the assessments against the plaintiff's lots were excessive by reason of including interest on the portion of the cost of the improvement apportioned to them from the date of the bonds delivered to the contractor in payment for the work, instead of from the time the bonds were actually issued to him.

The statute applicable to the matter contains these provisions, the clause relied upon by the plaintiff being printed in italics:

"Whenever the mayor and council may cause any street [to be improved in any of a number of ways specified] . . . they may, in their discretion, provide for the payment of the cost thereof by installments, instead of levying the entire tax or special assessment for such cost at one time; and for such cost they may issue internal-improvement bonds of the city, payable in ten equal installments of equal amounts each year, none of which bonds, nor any of the installments thereof, shall run longer than ten years, nor bear interest exceeding five per centum per annum. The credit of the city issuing such bonds shall be pledged for the payment thereof. Such bonds may be issued to the contractor constructing the improvement, in payment thereof, or the mayor and council may sell the same and pay the proceeds thereof to the contractor. Such bonds shall not be issued in amount in excess of the contract price of the work or improvement, except that the installment coupons shall include the interest on such installments to the maturity thereof. . . . Where improvement bonds are issued under this act for improvements the cost of which is by law, charged by special assessment against specific property, the mayor and council shall levy special assessments each year sufficient to redeem the installment of such bonds next thereafter maturing; *but in computing the amount of special assessment to be levied against each lot or piece of land liable therefor, interest thereon shall be added at the rate provided in said bonds as issued by the city from the date of the issuance of said bonds until the maturity of the installment of bonds next thereafter maturing.* Such special assessments shall be made upon the lots or pieces of land chargeable for the cost of such improvements respectively, and shall be levied and collected in the same manner as other taxes; but the assessed valuation fixed for such cost which is established for the first year's assessment shall be retained for the special assessments for the succeeding installments of said bonds." (Gen. Stat. 1915, § 1243; superseded in 1923 by R. S. 13-1018.)

"Whenever the mayor and council issue internal-improvement bonds to pay for the costs of any improvement the cost of which is chargeable against specific property . . . they shall apportion such cost by special assessments in installments, and the apportionment contained in the special-assessment ordinance shall hold good for all the installments that are to be collected from the specific property chargeable with the cost of said improvement.

. . . The ordinance apportioning such cost may provide for the collection of two installments with not to exceed interest for two years, or one installment and interest for one year or more, at such rate aforesaid, in the first year in which such assessment is to be collected, if the bonds for such improvement and interest on the same mature in such manner as to require such levy. The last amount so certified shall contain the installment with the interest to the date of maturity of the last bond outstanding, which interest shall not be for more than one year." (Gen. Stat. 1915, § 1244.)

The statute does not in terms require the bonds to be dated the day they are delivered and such arrangement would scarcely be practicable as such matters are usually conducted. (See 21 A. & E. Encyc. 58.) Some latitude in the matter is almost necessary in order to make allowances for uncertainties as to the time that different steps in the transaction may be completed. While the phrase "the date of the issuance of said bonds" does not strictly mean the same as "date of the said bonds" it may naturally be used in a general way in that sense, and we are of the opinion it was so intended by the legislature in this instance, such interpretation appearing to be in accordance with the apparent purpose of the statute when read as a whole.

"Under varying circumstances a question arises as to the *date of the issue* of bonds for the purpose of determining the validity of the power to issue, the regularity of the proceedings, or the rights of the purchaser. It may be laid down that as a general rule the *date of delivery* of the bonds by the municipality to the creditor or purchaser is to be regarded as the date of issue. But this meaning is not uniform and unvarying. It is always a question of the intention of the legislature to be derived from a consideration of the entire statute in which the term is used. It is true that no obligation is created upon a bond until it has been sold and delivered, but 'issued' as used in an act concerning municipal bonds is a relative term. It may mean *executed* (*i. e.*, signed and sealed), under some circumstances, and *delivered* under others." (2 Dillon on Municipal Corporations, § 902.)

In the situation here presented no hardship results to the taxpayer from computing the interest he is required to pay from the date borne by the bonds instead of from the date of their actual delivery. The contractor is paid by turning over to him bonds of an earlier date at a valuation which includes the accrued interest. Because the contractor is required to give credit for the accrued interest the amount of the principal of the bonds he receives is reduced just that much and therefore it is essential to a fair adjustment that the taxpayer shall raise a fund equal to the full amount due on the bonds according to their terms at the time of final pay-

ment. That policy is obvious from the language of the statute quoted. The contractor pays the interest to the time he receives the bond on the theory that he is going to get it back. He is denied the benefit of his contract if it is withheld. He is entitled to interest from the date of the bond and his claim therefor is a proper charge against the improved property.

A careful consideration of the clause of the statute printed in italics will show that it was framed primarily to show the date to which the payment of interest is to extend, not the date at which it is to begin. If all bonds were drawn so as to fall due on December 20, and all taxes were promptly paid at that time, there would be no occasion for the clause in question. The situation it is designed to meet is this: Suppose the taxpayers against whose property the cost of the improvement is charged have paid in by December 20 the full amount of an installment of the charge, but the corresponding set of bonds are not due for three months. The bond holders cannot be required to forego the as yet unearned interest and turn in their bonds in exchange for the money on hand. The money in the hands of the county treasurer will draw no interest for the benefit of those who paid it in, and it is necessary that provision shall be made for the additional three months' interest. The purpose of the italicized clause is to supply this gap by adding the needed amount to what would otherwise be the assessment against the improved property and so requiring the owners to pay it. There is no essential unfairness in placing this additional burden on the taxpayer. It is due to the fact that the maturity of the obligation to pay taxes is necessarily fixed while that of the bonds as necessarily varies. The extent of the burden depends upon the period elapsing between the two maturities.

We conclude that it was proper the assessment should include interest from the date of the bonds.

The judgment is reversed and the cause remanded with directions to deny the injunction.